ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 16 2006

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TAMI J. SIGSTAD, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:05-CV-635-A |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Tami J. Sigstad brings this action pursuant to Sections 405(g) and 1383(c)(3) of

Title 42 of the United States Code for judicial review of a final decision of the Commissioner of

Social Security denying her claims for disability benefits under Title II and supplemental security

income or SSI benefits under Title XVI of the Social Security Act.

Sigstad applied for disability insurance on January 26, 2004, with a protective filing date of

December 30, 2003, for her SSI application, alleging disability beginning November 15, 2003 due

to liver failure, hepatitis, altered mental status, jaundice, ascites, weakness, edema, and poor hand

coordination. (Tr. 72). After the Social Security Administration denied Sigstad's application for benefits both initially and on reconsideration, Sigstad requested a hearing before an administrative law judge (the "ALJ"). ALJ Herbert J. Green held a hearing on March 21, 2005, in Fort Worth, Texas. (Tr. 289). Sigstad was represented by counsel. On April 25, 2005, the ALJ issued a decision that Sigstad was not disabled and was not entitled to disability insurance or SSI benefits. (Tr. 15-20). The Appeals Council denied Sigstad's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.      STANDARD OF REVIEW

        The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.   Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the

2

appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley,* 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.*

3

This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.    ISSUES

    1.    Whether the ALJ erred in relying on opinions offered by the medical expert over those offered by a treating source; and

    2.    Whether the ALJ took a selective view of the evidence by not considering the existence and effect of all impairments documented in the record.

D.    ADMINISTRATIVE RECORD

    1.    Treatment History

The medical records in the administrative transcript contain the following information:

Sigstad was hospitalized December 30, 2003 through January 9, 2004 for persistent and severe abdominal pain and abdominal swelling. (Tr. 143, 146). Diagnostic studies showed ascites[1] and possible peritonitis. Her discharge diagnoses included cirrhosis secondary to alcohol abuse, ethanol withdrawal, coagulopathy, ascites, and hypokalemia.[2]  (Tr. 116).  Sigstad returned to the emergency room on January 12, 2004 with complaints of vomiting and pain in the right upper quadrant of her abdomen, and said she felt a hard knot by her liver. (Tr. 158). She was tender across her abdomen, with abdominal distention attributed to ascites, and her liver felt hard. The emergency

---

[1] Ascites refers to effusion and accumulation of serous fluid in the abdominal cavity. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 158 (29th ed. 2000).

[2] Cirrhosis is a liver disease characterized by a lengthy latent period, usually followed by the sudden appearance of symptoms, which in advanced stages, include ascites, jaundice, portal hypertension, and central nervous system disorders. *Id.* at 357. Coagulopathy refers to any disorder of blood coagulation, *Id.* at 368, while hypokalemia refers to abnormally low concentrations of potassium in the blood. *Id.* at 864.

room physician also noticed signs of jaundice. (Tr. 159). Morphine provided good pain control, and Sigstad was discharged with diagnoses of alcoholic hepatitis[2] and ascites. (Tr. 150, 159).

A liver sonogram on March 29, 2004 showed thickened bile in Sigstad's gallbladder, but no gallstones, and moderate fatty liver infiltration. (Tr. 213). Laboratory studies in April 2004 for hepatitis A and C were non-reactive, but her $T_3$ thyroid hormone level was high.[3] (Tr. 206).

Sigstad had an enlarged right submandibular gland removed in July 2004 after complaining of swelling and tenderness on the right sight of her neck. (Tr. 193-94, 199). Follow-up visits indicate that she tolerated the procedure well, (Tr. 190-91), but she complained of feeling depressed because she had no money and no job. (Tr. 253). Sigstad's stomach was swollen and tender during an examination on July 31, 2004. Her weight was stable. Her assessment was alcoholic liver disease, a history of hepatitis C with laboratory results negative for hepatitis C antibodies, and an adjustment disorder. (Tr .254). Her doctor prescribed Lexapro for the adjustment disorder. (Tr. 254). Sigstad complained of blood in her stool during a check-up in October 2004, and was referred for a colonoscopy, (Tr. 245-46), which confirmed mild diverticulosis. (Tr. 288A4, 288A7).

Sigstad went to the emergency room on November 18, 2004 with complaints of abdominal pain persisting for three days. (Tr. 260-61). She had mild abdominal distention, and reported that the pain was exacerbated by deep breathing. (Tr. 261). Abdominal radiology studies showed no specific abdominal pathology. (Tr. 269). An ultrasound showed stones and polyps in Sigstad's

---

[2]  Alcoholic hepatitis is a liver inflammation resulting from alcoholism, and is often a precursor to cirrhosis of the liver. *Id.* at 808.

[3]  $T_3$, or triiodothyronine, is an iodine-containing thyroid hormone chiefly produced in the liver. *Id.* at 1878.

gallbladder, although she was not unusually tender over the area of her gallbladder. The ultrasound was otherwise negative and showed no free intra-abdominal fluid. (Tr. 267, 271). An echocardiogram showed minor nonspecific ST-T wave changes. (Tr. 268).

In December 2004, Sigstad was seen at the county medical clinic for possible referral to a liver specialist. She had no complaints during that visit, and her cirrhosis disease was assessed as stable. (Tr. 235-36). Her physician indicated that the clinic would attempt to have Sigstad seen by a specialist for her liver problems. (Tr. 236). In February 2005, treating physician Tuan Nguyen completed an application in support of Sigstad's application for food stamps in which he opined that liver cirrhosis rendered Sigstad permanently disabled. (Tr. 283).

Abdominal magnetic resonance imaging (MRI) studies dated February 25, 2005 were consistent with hepatic cirrhosis, but negative for ascites. (Tr. 285-86). Diagnostic studies on May 11, 2005 showed no acute cardiac disease, but an electrocardiogram was considered abnormal. (Tr. 288A14-15). Thyroid tests performed after the ALJ issued his decision were consistent with Graves' disease.[5] (Tr. 288A10).

2.    Administrative Hearing

Sigstad testified that she was born August 22, 1961. (Tr. 291). She graduated high school, and had work experience as a restaurant line-server, a cashier, and an assistant store manager. (Tr. 292). She testified that she had not worked since November 2003, and considered herself unable to work because of abdominal swelling and constant pain. (Tr. 293). Sigstad testified that she had been sober for one year and three months. (Tr. 293-94). She also testified that the medication for

---

[5] Graves' disease is a syndrome of diffuse hyperplasia of the thyroid. *Id.* at 516. Hyperplasia is an abnormal multiplication or increase in the number of normal cells in normal arrangements in a tissue. *Id.* at 855.

her liver condition was prescribed by her primary care physician because there was no specialist available to treat her. (Tr. 294).

Sigstad lived with her sister and brother-in-law. She testified that she had good days and bad days. (Tr. 294). On bad days, she slept most of the day. She testified that, on a good day, it took her five or six hours to get ready for any activity. She testified that sitting for an extended period was painful, while standing for an extended period caused swelling. (Tr. 295). She attended AA meetings and accompanied her sister to the grocery store, but otherwise stayed home during the day. (Tr. 295).

Sigstad's current medications included Darvocet and Tramadol for pain, as well as anti-depressant medication. She testified that the Darvocet caused drowsiness. (Tr. 296-97). She was able to dust and do light housework, but could not push the vacuum cleaner. Sigstad testified that her sister prepared the meals. Sigstad estimated that she could sit for two or three hours on a good day, but was bedridden on her bad days. She complained that her stomach was swollen and hard, and her physician wanted to drain off the accumulated fluid. In addition to the pain, Sigstad testified that she had problems with confusion and memory loss. (Tr .299). Sigstad's sister, Teri Nix, testified that her sister had moved in with her because she was unable to work. Nix testified that she had observed problems with Sigstad's memory and her ability to keep track of conversations and what she was doing. (Tr. 300).

Medical expert Charles Murphy testified that Sigstad's medically determinable impairments included alcoholic cirrhosis as diagnosed in December 2003, although she had shown improvement in her abnormal laboratory findings after she stopped drinking alcohol. There was also suspicion of

7

ascites, but Murphy testified that this was difficult to diagnose by physical examination alone. Magnetic resonance imaging (an MRI) and an ultrasound in November and December 2004 had shown no ascites or ongoing ascites. Murphy noted that Sigstad did have an ongoing problem with gall stones. (Tr. 302). He opined that Sigstad could reasonably be expected to perform a full range of sedentary work on a regular basis with no non-exertional impairments.[6]

Sigstad's counsel asked Murphy if the chemical imbalance of liver disease could cause memory impairment. Murphy conceded that advanced liver disease could cause encephalopathy, but that encephalopathy was not demonstrated in Sigstad's case. Murphy testified that narcotic medication could result in some cognitive loss. (Tr. 302). He disagreed with Nguyen's opinion that Sigstad could not work, and noted that Nguyen's opinion was documented on an application for food-stamp benefits and was not part of a complete residual functional capacity report. (Tr. 306).

3.     ALJ Decision

The ALJ found that Sigstad maintained her disability insured status at all times relevant to his decision and had not engaged in substantial gainful activity since November 15, 2003. He also found that Sigstad had severe alcoholic liver disease, but had no impairment or combination of impairments listed in or equal to an impairment found in the Listing of Impairments. (Tr. 19). In assessing Sigstad's residual functional capacity, the ALJ determined that she retained the ability to perform sedentary work activity. Considering Sigstad's age, education, and residual functional capacity, the ALJ found that the administrative regulations and Rule 201.28 of the Medical-Vocational Guidelines directed a conclusion that Sigstad was not disabled. (Tr. 20). *See generally*

---

[6] Vocational expert Dillon Snowden testified that all of Sigstad's previous work had required light exertional activity. (Tr. 306).

20 C.F.R. §§ 404.1569, 416.969; 20 C.F.R. Part 404, Subpart P, app. 2, § 201.28. The ALJ

concluded that Sigstad was not eligible for disability insurance or SSI benefits. (Tr. 20).

D.    DISCUSSION

Sigstad contends that the ALJ erroneously relied on Murphy's testimony over the disability

opinion offered by Nguyen, who was a treating source. Nguyen had offered the opinion that Sigstad

was disabled by her liver disease; however, the ALJ accepted Murphy's testimony that Nguyen's

statement was not supported by the record and was not part of a complete functional capacity

assessment. (Tr. 18). Although Sigstad asserts that the ALJ erred in relying on Murphy's testimony,

the ALJ duly noted Nguyen's opinion and exercised his role in assessing the credibility of both

expert and lay witnesses. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Moreover,

opinions about a claimant's ability to work are not medical opinions entitled to special significance

because they address the ultimate issue of disability, which is reserved to the Commissioner. 20

C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Sigstad also argues that the tests the medical expert relied on when he testified that she did

not have ascites were not the best or most appropriate type of tests for evaluating the presence of

ascites. She asserts that Murphy's testimony is undermined by previous tests and other physicians

who have confirmed the presence of ascites, and contends that there is no evidence of a "spontaneous

resolution" or draining to relieve ascites.

Sigstad cites no medical sources to support her contention that the diagnostic tests Murphy

referred to where not the proper types of tests for identifying ascites. Sigstad has not challenged

Murphy's qualifications as an acceptable medical source under the regulations, *See generally* 20

C.F.R. §§ 404.1513, 416.913, and has not demonstrated that Murphy's testimony that she has no ongoing ascites is unsupportable or unreliable.  In addition, the ALJ observed that the state agency medical consultants who reviewed Sigstad's applications initially and on reconsideration noted the reports of ascites, but opined that Sigstad could perform light work with no postural or other work-related limitations. (Tr. 18, 218-25).  Sigstad has not demonstrated that the ALJ erred in accepting the medical expert's opinion that she could perform sedentary work activity, which the ALJ noted is the least strenuous level of physical exertion.

Sigstad also complains of the ALJ's failure to weigh other illnesses that contribute to her disability, and contends that the ALJ took a selective view of the evidence and ignored evidence favorable to her claims.  She contends that evidence of her adjustment disorder, hypertension, congestive heart failure with edema, Graves Disease, and abnormal blood chemistry was ignored by the ALJ.  A review of the record does not reflect that Sigstad's adjustment disorder has required additional mental health services,[7] or that any of the impairments she refers to are not amenable to medical supervision and management.  Sigstad does not specify what additional work-related limitations any of these disorders allegedly impose that are not reflected in her current residual functional capacity for sedentary work.

Sigstad has not demonstrated that the ALJ's assessment of her residual functional capacity is unsupported by substantial evidence or that the ALJ erred in applying the Medical-Vocational Guidelines.  Sigstad has not established a basis for disturbing the Commissioner's decision.

---

[7]  Sigstad completed administrative forms indicating she had no mental or emotional problems that limited her ability to work, and when the administrative caseworker contacted by telephone, Sigstad expressly denied having a mental component to her disability.  (Tr.  99, 103).

10

RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until July 10, 2006. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until July 10, 2006 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the

opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE _16_, 2006.

CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

12